J. Morton ASBURY et al., Plaintiffs,

v.

UNITED STATES of America

and

Interstate Commerce Commission, Defendants,

and

The Chesapeake and Ohio Railway Company, Defendant-Intervenor.

Civ. A. No. 68–C–31–A.

United States District Court
W. D. Virginia,
Abingdon Division.

March 28, 1969.

Landis, Cohen & Singman, Julian H. Singman, Orlin L. Livdahl, Jr., Washington, D. C., Kenneth P. Asbury, Wise, Va., for plaintiffs.

Edwin M. Zimmerman, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Thomas B. Mason, U. S. Atty., Roanoke, Va., for United States.

Robert W. Ginnane, Gen. Counsel, John E. Faulk, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

G. R. C. Stuart, Penn, Stuart & Miller, Abingdon, Va., William R. Althans, Doyle S. Morris, Garth E. Griffith, Cleveland, Ohio, for defendant-intervenor.

Before BUTZNER, Circuit Judge, DALTON, Chief District Judge, and MERHIGE, District Judge.

MERHIGE, District Judge.

In January of 1965, the C. & O. Railroad Company made application to the I.C.C. for a certificate of public convenience and necessity permitting the abandonment of its branch line between Jenkins, Kentucky and Meade, Virginia, which it had operated since 1949.

The line served a rugged and mountainous area containing a population of approximately 5,500 people. The economic life of the area is based almost entirely on the production of coal. The branch line starts at an elevation of over 1,500 feet, climbs the slope of Pine Mountain and traverses the mountain by means of a 3,600 foot tunnel known as Pine Mountain Tunnel.

The instant plaintiff and others protested any abandonment, and hearings were held resulting in the hearing examiner recommending to the Commission the denial of C. & O.'s application. The Commission, contra to its examiner's recommendations, granted the application.[1]

The protestants petitioned for reconsideration and rehearing, and an order denying said petition was entered in December of 1967.

Plaintiffs, who are shippers, coal producers, governmental and quasi-governmental bodies, and other members and organizations of the area, complain that the I.C.C. order permitting the abandonment of the branch line, known as the Meade Fork Subdivision, is not supported by substantial evidence and that the Commission in refusing to follow its hearing examiner's recommendations did so without having heard the witnesses or making subsidiary findings.

---

1. C & O RR Co. Abandonment between Jenkins, Kentucky and Meade, Virginia, 331 I.C.C. 889 (1967).

The record discloses that in August, 1965, some seven months after making application to abandon its Meade Fork Subdivision, said subdivision became inoperative by reason of an inspection disclosing that the Pine Mountain Tunnel aforementioned was unsafe. C. & O. suspended service prior to the Commission's ruling on its application.

The right of review of administrative actions accorded the courts is narrow and limited.

■ If the record before this Court, considered in its entirety, supports, as we find it does, the Commission's findings by substantial evidence, and, if sound in law, then we must, as we do here, dismiss the complaint. Blue Ridge Transfer Co. v. United States, 283 F. Supp. 858 (1968); Washington & Old Dominion Users Ass'n. v. United States, 287 F.Supp. 528 (1968); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821.

■ The Court's function in these cases is to determine whether, regardless of its view as to the ultimate conclusion it might have drawn had it heard the evidence, the Commission, or any other administrative body, whose findings are to be given that deference accorded "judgments of a tribunal appointed by law and informed by experience," acted upon evidence supported by the record and within its Congressionally granted powers. Interstate Commerce Comm. v. Union Pacific R.R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308 (1912); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Administrative Procedures Act, § 10(e), 5 U.S.C. § 706.

■ An abandonment case poses to the Commission the task of determining the factual issue as to whether the abandonment is consistent with public necessity and convenience. In determining whether it is consistent as aforesaid, the Commission must weigh the benefits to particular communities and commerce of continued operations against the burden thereby imposed upon other commerce.

State of Colo. v. United States, 271 U.S. 153, 168, 46 S.Ct. 452, 456, 70 L.Ed. 878 (1926); Wash. & Old Dominion Users Ass'n. v. United States, *supra.*

This fact finding responsibility rests with the Commission and not the courts.

The standard specified in the Interstate Commerce Act to be applied is whether "the present or future public convenience and necessity permit of such abandonment." Section 1(18) Interstate Commerce Act.

C. & O.'s contention before the Commission was that the approximately 15 miles of branch line should be abandoned by reason of their allegation that it would take an unrecouperable sum in excess of $1,500,000.00 to repair the Pine Mountain Tunnel allegedly found to be in an unsafe condition.

Plaintiffs contend (1) that the tunnel could be repaired for a sum much less; and (2) any sums in the record required to repair the tunnel were not only recouperable, but even if that issue were determined against them, there was an absence of subsidiary findings on the issue of whether, on balance, the public convenience and necessity permitted abandonment. Inherent in plaintiffs' contention in this latter regard is that the C. & O. is a viable financial company, and that the Commission should have looked only to the system's earnings in this connection.

The record discloses that the branch line's revenues were generated by coal shipments. The Commission considered and found that there is an excellent highway system in the area serviced by at least three motor carriers, there is additional rail service at Jenkins, Kentucky, and in addition, found that most of the coal in the area was in fact being trucked to other railroads for shipment, particularly the Norfolk & Western at Norton, Virginia. In essence, they found that the community would not be isolated from alternate means of transportation. In attempting to determine whether the present or future public convenience and necessity permitted aban-

donment, the Commission attempted to reach a conclusion on the amount of coal available in the sparsely populated area served by the branch line, and concluded after weighing conflicting testimony of experts of both plaintiff and C. & O. that the available coal reserves would be exhausted in about ten years. These were factual determinations based upon substantial evidence, which this Court has no right to disturb. The aforementioned factual findings were a link in the chain of necessity in the Commission's considering the recouperability of the estimated cost of repairs to the tunnel. That the Commission accepted the evidence introduced by the C. & O. as to the cost of the estimated repairs is unquestioned. See 331 I.C.C. 897. The Commission was under an obligation to consider all factors in reaching its conclusion as to whether rejection of C. & O.'s plea would be an undue burden on Interstate Commerce. This alleged burden, of necessity, frequently involves various elements. See Colo. v. United States, *supra*.

A detailed recitation by this Court of the evidence on which the Commission acted would be of little help in reaching the gist of the plaintiff's argument. We think that the Commission in its ultimate conclusion based same on rationally related findings which were supported by substantial evidence. The fact that the Court has experienced no difficulty in ascertaining the Commission's basis for its actions is, we think, a ready answer to plaintiff's complaint that the Commission's decision is not supported by subsidiary findings and is contra to the evidence in the case. Having so concluded, no more is required except to determine if the Commission's findings were based on proper legal principles. See Great Coastal Express, Inc. v. United States, 243 F.Supp. 943, aff'd 382

U.S. 369, 86 S.Ct. 546, 15 L.Ed.2d 424 (1966).

■ Addressing ourselves to plaintiffs' contention that the Commission applied inappropriate legal principles, and having found as heretofore stated that a review of the entire record reveals substantial evidence supporting the Commission's ultimate findings,[2] plaintiffs' contention that there is "a lack of a reasonable basis upon which this Court can conclude that the decision is not arbitrary and capricious" is based upon the premise that the Commission was required, as a matter of law, not only not to have looked to future earnings of the line in considering the recoupment of the cost of repairs to the tunnel, but should have looked only to the system's earnings. This position would appear to stem from plaintiffs' contention that the Commission should have found that the necessity to repair the tunnel was occasioned by the C. & O.'s neglect to maintain same from its inception.

■ This Court has no power or inclination to strike down conclusions of an administrative body which appear to be reasonably drawn from the evidence. It was the Commission's responsibility to draw conclusions from its findings, and they cannot be disturbed unless this Court finds them to be unreasonable and capricious.

It is not difficult for litigants to take a given set of facts and draw dissimilar conclusions. Such a result occurs daily in the practice of the art of advocacy. See F.N. 17, *Consolo, supra*.

This Court is without authority to conduct a *de novo* review.

Plaintiffs would have this Court rule, as a matter of law, that the Commission was bound to have concluded that the substantial cost to repair the Pine Moun-

---

2. Substantial evidence is "Enough to justify, if the trial went to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Ill. C. Ry. Co. v. Norf. & West. RR Co., 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162; or "Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Maritime Comm'n., 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

tain Tunnel came about as a result of deferred maintenance, and that since the record disclosed profitable years for the line since 1948, that the cost of rehabilitation rather than being considered over a ten year future period should be spread over the reasonable life of the tunnel commencing with the time it was built.

This argument, insofar as it goes to the alleged inequity, loses its viability by reason of the fact that the Commission specifically referred in its ultimate findings to the history and description of the tunnel, and made specific reference to "the fault in the mountain, the difficulty experienced with the original construction, *the high percentage of expense to applicant of past maintenance of the tunnel*—," See 331 I.C.C. 897.

In view of the Commission's findings that any need for the line would be limited to the amount of coal reserves which would be exhausted within ten years, we think the Commission quite rationally and properly considered the amortization period for any rehabilitation of the tunnel to be equal to the ten years in which coal would be available. Our conclusion is particularly strengthened by the fact that the record discloses with clarity that nothing since its inception had been shipped over the line except coal.

While it is undoubtedly correct that the cost of repairing the tunnel could well be borne by the railroad without weakening its capital structure so as to adversely affect the transportation system, it is beyond argument that in view of the Commission's ultimate findings concerning the useful life of the branch line, i. e. ten years, that any such expenditure would be an uneconomical outlay of funds.

The United States Supreme Court has consistently recognized that the operation of the national railway system without waste is one of the purposes of the Transportation Act.

Hence, regardless of whether any such outlay would have a dilatory economic effect on the C. & O. as a whole, any such expenditure as would be necessary to repair the Pine Mountain Tunnel cannot under the record be justified in terms of reasonably predictable revenues, and this supports the conclusion that any such expenditure would be wasteful. The Commission having reached that conclusion, it is not a matter which this Court can or would be willing to disturb. See Purcell v. United States, 315 U.S. 381, 62 S.Ct. 709, 86 L.Ed. 910.

Having concluded that the Commission's findings are based on substantial evidence to which it applied sound legal principles, the relief which the plaintiffs seek is denied.